Leslie H. JOCKMUS and Esther N. Jockmus, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. 8250.

United States District Court
D. Connecticut.

July 22, 1963.

Samuel Brodsky, of Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City, and Max Perl, of Perl, Wolf & Connors, New York City, for plaintiff.

R. Michael Duncan, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith and Jerome Fink, Washington, D. C., Robert C. Zampano, U. S. Atty., New Haven, Conn., on the brief), for defendant.

TIMBERS, District Judge.

Plaintiffs brought this action, pursuant to 28 U.S.C. § 1346(a) (1), for refund of federal income taxes for the calendar year 1956 in amount of $31,457.16 claimed to have been erroneously assessed and collected, plus interest.

Following trial on the merits to the Court without a jury, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I

1. This is an action brought by plaintiffs, Leslie H. Jockmus and Esther N. Jockmus, who are husband and wife residing in Branford, Connecticut, for the refund of federal income taxes for the calendar year 1956 alleged by them to have been erroneously assessed and collected.

2. On or about April 8, 1957, plaintiffs timely filed a joint federal income tax return for the calendar year 1956, an accurate copy of which is attached as Exhibit I [1] hereto. Said income tax return showed a tax liability of $89,595.47, which sum was paid by plaintiffs as follows:

(a) $6,000 thereof was paid as income tax withheld by the employer of Leslie H. Jockmus;

(b) $54,000 thereof was paid prior to April 8, 1957, in installments of estimated income tax payments for the calendar year 1956; and

(c) the balance of $29,595.47 thereof was paid upon the filing of the return.

Plaintiffs kept their books and records and reported their income on the cash receipts and disbursements method of accounting.

3. After audit of this return by his agents, the Commissioner of Internal Revenue determined deficiencies in 1956 income taxes resulting from several adjustments to the income and deduction items shown on the return.

(a) The Commissioner determined to disallow claimed deductions

[1]. Exhibits referred to are those attached to the Stipulation of Facts or to the Pleadings; they are incorporated herein by reference; but they are not physically attached to these Findings of Fact.

in the amount of $1,200.60, which produced a deficiency in the amount of $972.48. On or about August 12, 1958, plaintiffs executed a Treasury Form 870 agreeing to the immediate assessment of a deficiency in 1956 taxes in this amount, and on February 13, 1959, this deficiency, plus interest thereon computed to September 12, 1958 in the amount of $82.-47, or a total of $1,054.75, was assessed. On February 24, 1959, plaintiffs paid this amount to the District Director of Internal Revenue. This adjustment is not in dispute in this action.

(b) After protest by plaintiffs to the Appellate Division of the Internal Revenue Service, and as a result of further review in that Division, the Commissioner (1) disallowed interest deductions claimed on the return for "Corporate Finance and Loan Corp." in the amount of $21,-384.38, and for "Court Finance and Loan Corp." in the amount of $784.-58, and (2) determined that the long term capital gain reported in the amount of $31,250 for "U. S. Treasury notes $1,000,000 on face amount" should be increased by the sum of $1,250 to $32,500. The Commissioner also determined (3) that the plaintiffs' taxable income should be increased by the sum of $10,460.-14, representing overpaid refundable interest in connection with the note to Corporate Finance and Loan Corp. dated December 21, 1955, and refused to allow plaintiffs an offsetting deduction in this amount as alleged interest paid by plaintiffs in connection with the note to Corporate Finance and Loan Corp. dated November 2, 1956. Neither the sum of $10,460.14, alleged by plaintiffs to be a proper interest deduction, nor the sum of $10,460.14 included by the Commissioner in income as overpaid refundable interest, had been reported by plaintiffs on their returns. Based upon the aforesaid adjustments, the Commissioner determined a further deficiency in the amount of $27,569.15.

On or about October 20, 1959, plaintiffs executed a Treasury Form 870 agreeing to the immediate assessment of a deficiency in 1956 taxes in this amount, and on November 13, 1959, this deficiency, plus interest computed to November 9, 1959 in the amount of $4,248.67, or a total of $31,817.82, was assessed. On November 19, 1959, plaintiffs paid this amount to the District Director. These adjustments are disputed by plaintiffs in this action.

4. (a) On or about December 10, 1959, plaintiffs filed a timely claim for refund in the amount of $27,256.65 contesting the adjustments set out in paragraph 3(b) above, an accurate copy of which claim is attached to the complaint as Exhibit A thereto. This claim was disallowed by the District Director by notice sent by registered mail dated March 3, 1960.

(b) This action is brought within the period of limitations allowed by law for the institution thereof.

## II

5. On or about December 5, 1955, Harry N. Cushing, President and Treasurer of Corporate Finance and Loan Corp. of Boston, Massachusetts, wrote a letter to Max Perl. An accurate copy of the said letter is attached as Exhibit II.

6. On December 21, 1955, Max Perl, pursuant to instructions and authorization from plaintiff, Leslie H. Jockmus, placed an order for Mr. Jockmus with Lakeside Securities Corporation (sometimes hereinafter called Lakeside) of Chicago, Illinois, for the purchase of $1,000,000 face amount 2⅞% U.S. Treasury Notes maturing March 15, 1957, with the March 15, and September 15, 1956 coupons detached, at a price of 97⅜, or a total principal purchase price of $973,-750. An accurate copy of the confirmation transmitted by Lakeside to Mr. Jockmus is attached as Exhibit III.

7. On or about December 21, 1955, Mr. Jockmus transmitted a letter to

Lakeside (an accurate copy of which is attached as Exhibit IV). On or about the same date, Mr. Jockmus transmitted a letter to Corporate Finance and Loan Corp. (an accurate copy of which is attached as Exhibit V). On or about the same date, Mr. Jockmus executed and transmitted a promissory note to Corporate Finance and Loan Corp. (an accurate copy of which is attached as Exhibit VI).

8. On or about the same date Mr. Jockmus executed and transmitted a promissory note to Court Finance and Loan Corp. of Boston, Massachusetts, in the amount of $30,000 (an accurate copy of which is attached as Exhibit VII). Court Finance and Loan Corp. issued a check in this amount dated December 21, 1955, to the order of Leslie H. Jockmus (an accurate copy of which is attached as Exhibit VIII), which Mr. Jockmus received, endorsed and deposited in his account at the Chase Manhattan Bank in New York City.

9. On or about this date Mr. Jockmus executed a check in the amount of $41,384.38 dated December 21, 1955, drawn on the Chase Manhattan Bank to the order of Corporate Finance and Loan Corp. (an accurate copy of which is attached as Exhibit IX), and transmitted this check to Corporate Finance and Loan Corp., which check was received, endorsed and deposited by Corporate Finance and Loan Corp. in its account at the Pilgrim Trust Company in Boston, Massachusetts.

10. On December 21, 1955, Livingstone & Company, of Boston, Massachusetts, in consideration of $1,250 to be paid on or before September 15, 1956, granted to Jockmus an irrevocable option to sell to it on September 15, 1956 at a price of 100⅝, $1,000,000 U.S. Treasury 2⅞% Notes due March 15, 1957. An accurate copy of the letter granting this option, dated December 21, 1955, is attached as Exhibit X.

11. The U.S. Treasury Notes ordered purchased by Mr. Perl for the account of Mr. Jockmus from Lakeside (as set forth in paragraph 6 above), were in turn purchased by Lakeside from Salomon Bros. & Hutzler, New York City, dealers in U.S. Government securities. Said U.S. Treasury Notes were received from Salomon Bros. & Hutzler by the Chemical Corn Exchange Bank of New York City on December 22, 1955, for the account of Lakeside. On or about December 21, 1955, Corporate Finance and Loan Corp. ordered Livingstone & Co. to sell short for its account $1,000,000 face amount 2⅞% U.S. Treasury Notes maturing March 15, 1957, with all unmatured coupons attached. This short sale order was executed for Corporate Finance and Loan Corp. by Livingstone & Co. at a principal price of 100⁴⁰/₃₂, the sale being to Salomon Bros. & Hutzler at a sales price of $1,001,250 plus accrued interest of $7,740.39, or a total price of $1,008,990.39. Delivery terms on this short sale were to be at the Chemical Corn Exchange Bank in New York on December 22, 1955. In order to satisfy its delivery commitment on the short sale, on or about December 21, 1955, Corporate Finance and Loan Corp. instructed Lakeside to deliver the U.S. Treasury 2⅞% Notes ordered purchased by Mr. Jockmus to the order of Livingstone & Co. against payment. Livingstone & Co., in turn, on or about the same date instructed Lakeside to deliver the U.S. Treasury Notes to the order of Salomon Bros. & Hutzler at the Chemical Corn Exchange Bank against payment. Livingstone & Co. also directed Salomon Bros. & Hutzler to receive the U.S. Treasury Notes at the Chemical Corn Exchange Bank against payment to the order of Lakeside. In accordance with the instructions it had received from Corporate Finance and Loan Corp. and Livingstone & Co., Lakeside instructed the Chemical Corn Exchange Bank to deliver the Treasury Notes to Salomon Bros. & Hutzler, against payment. In accordance with these instructions, the Treasury Notes were delivered to Salomon Bros. & Hutzler and the sales price of $1,008,990.39 was credited to Lakeside's account at the Chemical Corn Exchange Bank. In this way, Corporate Finance and Loan

Corp. used the U.S. Treasury Notes held by Lakeside for Jockmus' account to make delivery of the U.S. Treasury Notes it sold short, and also used the proceeds of the short sale made by it to pay the purchase price of the U.S. Treasury Notes to Lakeside.

12. By communication subsequent to this date to Corporate Finance and Loan Corp., Mr. Perl, acting in the name of and pursuant to instructions and authorization from Mr. Jockmus, directed it to apply $20,000 of his $41,384.38 check in 1955 as interest and the balance of $21,384.38 of this check in 1956 as interest. This communication was acknowledged by letters from Corporate Finance and Loan Corp. to Mr. Jockmus dated December 27, 1955 and January 3, 1956, accurate copies of which are attached as Exhibits XI and XII respectively.

13. Corporate Finance and Loan Corp. recorded the transactions set forth above on its books of account as follows:

(a) The loan made to Mr. Jockmus and the obligation of Corporate Finance and Loan Corp. to make payment to Lakeside Securities Corp., were recorded at page 10 of the note register, under date of December 22, 1955, by an entry which shows a debit to the Notes Receivable Clients—Leslie H. Jockmus account in the amount of $973,750, and a credit to the Lakeside Securities Corp. account in the amount of $973,750.

(b) The receipt of $41,384.38 cash from Mr. Jockmus, the prepayment of $20,000 interest by him, and the additional margin deposited of $21,384.38 was recorded at page 5 of the cash receipts book, under date of December 27, 1955, by an entry which shows a debit to the Cash account in the amount of $41,384.38 and multiple credits to the Deferred Interest Income account in the amount of $20,000, and to the Customers Cash Margin account in the amount of $21,384.38.

(c) The sale by Corporate Finance and Loan Corp. in a short position, through Livingstone & Co. as broker, to Salomon Bros. & Hutzler of the $1,000,000 U.S. Treasury 2⅞% Notes due March 15, 1957, with March 15, 1956 and subsequent coupons attached was recorded at page 9 of the sales journal, under date of December 22, 1955, by an entry which shows a debit to the Livingstone & Co. account in the amount of $1,008,990.39, and multiple credits to the Accrued Interest account in the amount of $7,740.39, and to the Borrowed Bonds Payable account in the amount of $1,001,250.

(d) The payment made to Lakeside Securities Corp. of the proceeds of the short sale made to Salomon Bros. & Hutzler through Livingstone & Co. as broker was recorded at page 10 of the note register, under date of December 22, 1955, by an entry which shows a debit to the Lakeside Securities Corp. account in the amount of $1,008,990.39, and a credit to the Livingstone & Co. account in the amount of $1,008,990.39.

(e) The purchase from Lakeside Securities Corp. of the March 15, 1956, and September 15, 1956 coupons attached to the $1,000,000 U.S. Treasury 2⅞% Notes due March 15, 1957, and accrued interest at the time of purchase were recorded at page 10 of the purchase journal, under date of December 21, 1955, by an entry which shows multiple debits to the Borrowed Bonds Payable account in the amount of $28,750.00 and to the Accrued Interest account in the amount of $7,740.38, and a credit to the Lakeside Securities Corp. account in the amount of $36,490.38.

(f) The application of the balance of Mr. Jockmus' cash collateral to the payment of interest on the loan was recorded at page 8 of the journal, under date of January 30, 1956, by an entry which shows a debit to the Customers Cash Margin account

in the amount of $21,384.38, and a credit to the Deferred Interest Income account in the amount of $21,-384.38.

14. The books of account of Court Finance and Loan Corp. contain the following entry with respect to the transaction described above:

The loan to Mr. Jockmus in the principal amount of $30,000 and the payment of said amount to Mr. Jockmus were recorded under date of December 21, 1955, in the cash disbursements book, by an entry which shows a debit to the Loans Receivable Client—Leslie H. Jockmus account in the amount of $30,-000 and a credit to the Cash account in the amount of $30,000.

15. The books of account of Livingstone & Co. contain the following entries with respect to the transaction described above:

(a) The amount due from Salomon Bros. & Hutzler to Livingstone & Co. and the amount due from Livingstone & Co. to Corporate Finance and Loan Corp. in connection with the short sale executed by Livingstone & Co. as broker were recorded on page 24 of the sales journal under date of December 21, 1955, by an entry which shows a debit to the Salomon Bros. & Hutzler account in the amount of $1,008,990.39 and a credit to the Corporate Finance and Loan Corp. account in the amount of $1,008,990.39.

(b) The payment made by Salomon Bros. & Hutzler of the proceeds of the short sale to Lakeside Securities Corp. in accordance with the instructions given by Corporate Finance and Loan Corp. was recorded on page 92 of the journal, under date of December 22, 1955, by an entry which shows a debit to the Corporate Finance and Loan Corp. account in the amount of $1,008,990.-39, and a credit to the Salomon Bros. & Hutzler account in the amount of $1,008,990.39.

16. On September 15, 1956, Mr. Jockmus exercised the option to sell to Livingstone & Co. $1,000,000 face amount 2⅞% U.S. Treasury Notes at the option price of 100⅝, or a total sales price of $1,-006,250. An accurate copy of the confirmation slip from Livingstone & Co. is attached as Exhibit XIII.

17. On or about the same date, Mr. Jockmus executed and transmitted letters (i) to Corporate Finance and Loan Corp. (an accurate copy of which is attached as Exhibit XIV), and (ii) to Livingstone & Co. (an accurate copy of which is attached as Exhibit XV).

18. On September 15, 1956, Corporate Finance and Loan Corp. placed a purchase order with Livingstone & Co. to buy $1,000,000 face amount 2⅞% U.S. Treasury Notes due March 15, 1957. This order was executed by Livingstone & Co. at a sales price of $999,062.50 (99²⁹/₃₂).

19. Shortly after this date, Leslie H. Jockmus received a settlement statement from Livingstone & Co. (an accurate copy of which is attached as Exhibit XVI), and a check for $465.42 to his order (an accurate copy of which is attached as Exhibit XVII), for the balance due him as shown in the statement, and from Court Finance and Loan Corp. (an accurate copy of which is attached as Exhibit XIX).

20. The books of account of Corporate Finance and Loan Corp. contain the following entries with respect to the above transactions:

(a) The purchase by Corporate Finance and Loan Corp. of $1,000,-000 U.S. Treasury 2⅞% Notes due March 15, 1957 from Livingstone & Company to cover its short position, and loss sustained by Corporate Finance and Loan Corp. on the short sale, were recorded at page 2 of the purchase journal under date of September 15, 1956, by an entry which shows multiple debits to the Borrowed Bonds Payable account in the amount of $972,500.00, and to the Borrowed Bonds Expense account in

the amount of $26,562.50, and a credit to the Livingstone & Company account in the amount of $999,062.50.

(b) The application by Livingstone & Company of part of the proceeds of the sale of $1,000,000 U.S. Treasury 2⅞% Notes of March 15, 1957, by Mr. Jockmus to the payment of Mr. Jockmus' indebtedness to Corporate Finance and Loan Corp. was recorded at page 5 of the note register, under date of September 15, 1956, by an entry which shows a debit to Livingstone & Company account in the amount of $973,750.00, and a credit to the Notes Receivable—L. H. Jockmus account in the amount of $973,750.00.

21. The books of account of Livingstone & Company contain the following entries with respect to the above transactions:

(a) The purchase by Livingstone & Company of $1,000,000 U.S. Treasury 2⅞% Notes due March 15, 1957, from Mr. Jockmus was recorded at page 10 of the purchase journal, under date of September 15, 1956, by an entry which shows a debit to the Inventory account in the amount of $1,006,250.00 and a credit to Accounts Receivable—L. H. Jockmus in the amount of $1,006,250.

(b) The application of part of the proceeds of the sale by Mr. Jockmus to Livingstone & Company to the payment of the debts owed by Mr. Jockmus to Corporate Finance and Loan Corp. (for unpaid principal), and to Court Finance and Loan Corp. (for the unpaid principal plus accrued interest), and to the payment for the option granted by Livingstone & Co. to Mr. Jockmus on December 21, 1955, was recorded at page 55 of the journal, under date of September 15, 1956, by an entry which shows a debit to the Accounts Receivable—L. H. Jockmus account in the amount of $1,005,784.58, and multiple credits to the Corporate Finance and Loan Corp. account in

the amount of $973,750.00, to the Court Finance and Loan Corp. account in the amount of $30,784.58, and to the Profit and Loss account in the amount of $1,250.00.

(c) The cash payment by Livingstone & Company of the balance owed to Mr. Jockmus out of the proceeds of his sale was recorded at page 37 of the cash disbursements book, under date of September 15, 1956, by an entry which shows a debit to the Accounts Receivable— L. H. Jockmus account in the amount of $465.42 and a credit to the Cash account in the amount of $465.42.

(d) The sale of $1,000,000 U.S. Treasury 2⅞% Notes due March 15, 1957 to Corporate Finance and Loan Corp. to cover its short position was recorded at page 11 of the sales journal, under date of September 15, 1956, by an entry which shows multiple debits to the Corporate Finance and Loan Corp. account in the amount of $999,062.50, and to the Profit and Loss account in the amount of $7,187.50, and a credit to the Inventory account in the amount of $1,006,250.

22. The books of account of Court Finance and Loan Corp. contain the following entry with respect to the above transactions:

The satisfaction by Livingstone & Company of the Court Finance and Loan Corp. loan to Mr. Jockmus out of the proceeds of the sale by Mr. Jockmus was recorded at page 2 of the journal, under date of September 17, 1956, by an entry which shows a debit to the Livingstone & Company account in the amount of $30,784.58 and multiple credits to the Interest account in the amount of $784.58 and to the Loans Receivable Clients—L. H. Jockmus account in the amount of $30,000.

III

23. Court Finance and Loan Corp., Corporate Finance and Loan Corp., and

Livingstone & Co., had no common officers, directors or stockholders during the course of the above transactions.

24. The monthly high and low prices for the U.S. Treasury Notes (2⅞'s due 3/15/57) from October, 1955 to maturity, and for the U.S. Treasury Bonds (2⅜'s due 6/15/58) from October, 1956 to maturity are attached as Exhibit XXXIX.

25. The annual high and low prices for the U.S. Treasury Notes (2⅞'s due 3/15/57) from 1953 to maturity, and for the U.S. Treasury Bonds (2⅜'s due 6/15/58) from 1952 to maturity are attached as Exhibit XL.

26. The average monthly yields of three year maturity Treasury securities from 1955 to 1959 are attached as Exhibit XLI.

27. The New York Federal Reserve rediscount rates from Jan. 1, 1954 to August 15, 1960 and prime bank rates from Jan. 1, 1954 to August 15, 1960 are attached as Exhibit XLII.

28. The average monthly prices of taxable U.S. Treasuries for certain periods from 1953 to 1957 are attached as Exhibit XLIII.

29. The following price quotations are taken from the NEW YORK TIMES indicating the prices set forth below for the stated securities on the stated dates. Prices are per $100, and the decimals are 32's of a point.

|  | Date | Bid Price | Asked Price |
|---|---|---|---|
| 2 7/8% Treasury Notes due March 15, 1957:– | | | |
|  | Jan. 19, 1956 | 100.18 | 100.20 |
|  | Feb. 1, 1956 | 100.17 | 100.19 |
|  | Feb. 14, 1956 | 100.15 | 100.17 |
|  | Mar. 21, 1956 | 100.9 | 100.11 |
| 2 3/8% Treasury Bonds due June 1958:– | | | |
|  | Nov. 9, 1956 | 98.13 | 98.15 |
|  | Jan. 14, 1957 | 98.24 | 98.26 |
|  | Jan. 23, 1957 | 98.25 | 98.27 |
|  | Feb. 7, 1957 | 98.29 | 98.31 [2] |

---

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties to, and the subject matter of, this action.

2. The amounts paid by Mr. Jockmus to Corporate Finance and Loan Corporation and to Court Finance and Loan Corporation are not "interest * * * on indebtedness" within the meaning of Section 163(a) of the Internal Revenue Code of 1954.

3. The amounts paid by Mr. Jockmus to Corporate Finance and Loan Corporation and to Court Finance and Loan Corporation are not "losses incurred in [a] transaction entered into for profit" within the meaning of Section 165(c) (2) of the Internal Revenue Code of 1954.

4. The amounts paid by Mr. Jockmus to Corporate Finance and Loan Corporation and to Court Finance and Loan Corporation are not "ordinary and necessary expenses paid or incurred * * * for the production * * * of income [or] * * * for the management, conservation, or maintenance of property held for

2. The foregoing findings of fact are based upon paragraphs 1–22, 39, 41–45 of the Stipulation of Facts (Plaintiffs' Trial Exhibit 1) and the Addendum To Stipulation Of Facts (Plaintiffs' Trial Exhibit 1A). In view of the Court's holding in this case, paragraphs 23–38 and 40 of the Stipulation of Facts are not adopted by the Court in its Findings of Fact, since they do not relate to "such essential facts as lay a basis for the decision." 5 Moore's Federal Practice, ¶ 52.06 [1], p. 2659 (2d ed. 1951).

the production of income" within the meaning of Section 212 of the Internal Revenue Code of 1954.

5. The foregoing conclusions of law are based on Becker v. Commissioner, 277 F.2d 146 (2 Cir. 1960); Lynch v. Commissioner, 273 F.2d 867 (2 Cir. 1959); Nichols v. Commissioner, 314 F.2d 337 (5 Cir. 1963); Goodstein v. Commissioner, 267 F.2d 127 (1 Cir. 1959); Sonnabend v. Commissioner, 267 F.2d 319 (1 Cir. 1959); Broome v. United States, 170 F.Supp. 613, 145 Ct. Cl. 298 (1959).

6. Plaintiffs are entitled to judgment against defendant for the principal amount of $15,079.33, plus interest thereon at 6% according to law.[3]

The Clerk is directed to enter judgment accordingly.

[3]. This is in effect a stipulated judgment, agreed to by the attorneys for all parties, based on the alternative Count III of the complaint and recognizing that plaintiffs are entitled to a refund based upon the exclusion of reported capital gain and an appropriate adjustment for the inclusion of the so-called "interest" rebate in income.