**Carl SHAPIRO and Ruth Shapiro, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

Civ. A. No. 61–71.

United States District Court
D. Massachusetts.

March 31, 1964.

John M. Doukas, Boston, Mass., Brown, Rudnick, Freed & Gesmer, Boston, Mass., of counsel, Jack H. Calechman, Boston, Mass., for plaintiff.

W. Arthur Garrity, Jr., U. S. Atty., Thomas P. O'Connor, Asst. U. S. Atty., Boston, Mass., Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, David A. Wilson, Jr., Thomas F. Field, Department of Justice, Washington, D. C., for defendant.

JULIAN, District Judge.

Plaintiffs brought this action under 28 U.S.C. § 1346(a)(1) for refund of federal income taxes for the calendar year 1956 in the amount of $27,652.19 alleged by them to have been erroneously assessed and collected, plus interest.

After trial on the merits to the Court without a jury, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The plaintiffs, Carl Shapiro and Ruth Shapiro, are husband and wife residing in Newton, Massachusetts. They filed a joint income tax return for the calendar year 1956. The wife is co-plaintiff solely because she filed the return jointly with her husband. She was not involved in the transactions at issue. Therefore, whenever the word "plaintiff" or "Shapiro" is hereinafter used, it shall be taken to refer to the husband only.

2. Shapiro is a corporate executive and a high-bracket taxpayer. In the 1956 return he reported salaries and wages in the amount of $100,000 and an adjusted gross income of $141,457.02. He claimed a deduction for "interest" paid to Livingstone & Co. in the amount

of $44,121.58, based entirely on two items, one for $16,000 and the other for $28,750, as will hereinafter appear, which Shapiro claims were allowable deductions under Section 212(1) of the Internal Revenue Code of 1954 (26 U.S.C., 1955 ed., § 212).

The return showed a tax liability of $23,145.48. This amount was paid in full on or before the due date of the return.

3. Upon audit of the return by the Commissioner, the claimed deduction for "interest" was disallowed and a deficiency was proposed in the amount of $31,483.71. The entire proposed deficiency, together with interest due thereon, was paid in full.

4. On January 4, 1960, and within the period of limitation prescribed by Section 6511(a) of the Internal Revenue Code of 1954, the plaintiffs filed a claim for refund in the amount of $27,652.10, plus interest, on the ground that the Commissioner had erred in disallowing the deduction for "interest". On October 4, 1960, the District Director of Internal Revenue disallowed the claim for refund. This suit was brought on January 24, 1961, within the prescribed period.

5. At all times material to this case the plaintiffs kept their books and accounts and filed their federal income tax returns on the cash basis, and their taxable year was the calendar year.

6. In the spring of 1956 Shapiro became interested in the plan now at issue, after he was approached by the Livingstone brothers, M. Eli and Samuel, and informed by the latter that they had a plan which held out the prospect of reducing federal income taxes for high-bracket taxpayers and of effecting capital gains.

7. M. Eli Livingstone is the sole proprietor of Livingstone & Co., a Boston firm which deals exclusively in United States Treasury securities. Samuel Livingstone is an attorney and an accountant and acts as house counsel for Livingstone & Co. He is also a vice president of the Livingstone Securities Corporation.

8. In the course of the three meetings which ensued, the Livingstones gave Shapiro and his accountant a detailed explanation of the plan and of the purchases and sales of United States Treasury notes and bonds that it entailed. Shapiro was also told that, provided the transactions outlined by the Livingstones were carried out, he could suffer no financial loss due to fluctuations in the bond market.

9. At one of these meetings a copy of what purported to be a ruling letter from the United States Treasury was shown to Shapiro. This letter had not been issued to Shapiro and bore no indication of the identity of the person to whom it had been originally addressed.

10. The real purpose of the plan was not to produce income for Shapiro but to effectuate a reduction in the federal income taxes Shapiro would otherwise be required to pay on the high income he expected to receive in the calendar years 1956, 1957, and 1958.

11. Shapiro accepted the proposed plan and authorized its execution. Accordingly, the following pre-planned, interrelated acts took place:

a) On June 19, 1956, Shapiro and his accountant met with Samuel Livingstone at the latter's office. Samuel Livingstone caused four letters to be prepared, designed to carry out the transactions called for by the plan. All four were dated June 19, 1956. Two were addressed to Livingstone & Co. and signed by Shapiro (Exhs. J and M). One was addressed to Shapiro and signed by M. Eli Livingstone (Exh. K). The fourth (Exh. N) was signed by Shapiro and addressed to Salomon Bros. & Hutzler, a securities dealer in New York, hereinafter referred to as Salomon.

b) On the same day Livingstone & Co. purchased $2,000,000 face value in United States Treasury 2⅞% notes maturing June 15, 1958, from Salomon. Shapiro, through Livingstone & Co., sold $2,000,000 in United States Treasury

2⅞% notes maturing June 15, 1958, to Salomon. Shapiro in fact owned no such notes but borrowed them from Livingstone & Co. for the purpose of making a short sale. The notes so borrowed were the notes that Livingstone & Co. had bought at the same time from Salomon. Pursuant to instructions contained in Shapiro's letter to Salomon (Exh. N), Salomon credited the proceeds of Shapiro's short sale to Salomon to the account of Shapiro at Livingstone & Co. The amount so credited was $2,000,628.-42. These transactions involving $2,-000,000 in United States Treasury 2⅞% notes may be summarized as follows: Salomon sold the notes to Livingstone & Co., who in turn lent them to Shapiro, who sold them to Salomon through Livingstone & Co. The sale of the notes by Shapiro to Salomon was "paired off" by Salomon against the sale of the same notes by Salomon to Livingstone & Co. "Pairing off" is a bookkeeping procedure in bond houses which makes physical delivery of securities unnecessary when simultaneous buy and sell orders are received from the same person or firm. This activity involving the Treasury notes is claimed by Shapiro to have produced a credit in his favor on the books of Livingstone & Co. in the amount of $2,000,628.42.

c) On the same day Livingstone & Co. purchased from Salomon $2,000,000 face amount in United States Treasury 2⅞% bonds due June 15, 1958. Livingstone & Co. simultaneously purported to sell these same bonds to Shapiro with the December 15, 1956, and June 15, 1957, coupons removed, at a cost of $1,-930,000. This amount was charged by Livingstone & Co. against the short sale credit of $2,000,628.42 standing on its books in Shapiro's name, leaving an apparent credit balance in favor of Shapiro in the amount of $70,628.42. Shapiro purported to pledge the bonds to Livingstone & Co. as security for the 2⅞% Treasury notes that he borrowed from Livingstone & Co. The latter sold the pledged bonds to Samuel Livingstone who in turn sold them to Salomon. The transactions involving the bonds may be summarized as follows: Salomon sold the bonds to Livingstone & Co., who sold them to Shapiro; Shapiro pledged them to Livingstone & Co., who sold them to Samuel Livingstone; Samuel Livingstone sold them to Salomon, who had sold them to Livingstone & Co. in the first place. The sale of the bonds by Salomon to Livingstone & Co. was "paired off" by Salomon against the sale of the same bonds by Samuel Livingstone to Salomon. At the conclusion of this activity the books of Livingstone & Co. showed a credit balance of $70,628.42 in favor of Shapiro.

12. No notes or bonds involved in the above-described transactions were in fact delivered, received or paid for, or were intended ever to be delivered or received or paid for. All sales and purchases of the securities were simultaneous and were cancelled out and nullified by the bookkeeping process called "pairing off". Although United States Treasury notes and bonds bear serial numbers, in none of the transactions were the notes and bonds identified by serial numbers.

The transactions were not genuine. They were elaborate shams wholly lacking in substance.

The crediting of Shapiro with $2,000,-628.42 as the proceeds of the short sale of the notes, the debiting of his account in the amount of $1,930,000 for the purchase of the bonds, and the resulting credit balance of $70,628.42 in his favor were all fictitious bookkeeping entries reflecting the sham transactions.

I find that Shapiro, who is an experienced and successful business executive, did not in fact believe that he could become the owner of $2,000,628.42 in funds without paying any money for the United States Treasury notes that allegedly produced them; that he could use $1,930,000 of those funds to buy United States bonds; and that he would thereby acquire such ownership of the bonds as to be able to pledge them.

13. On June 22, 1956, Shapiro paid Livingstone & Co. the sum of $16,000.

The plaintiffs deducted that amount from their joint income tax return for the calendar year 1956, claiming that it was paid to Livingstone & Co. as a premium for the purported loan of the 2⅞% Treasury notes to Shapiro to enable him to make the short sale of the notes to Salomon. The legality of this deduction is in issue in this case. I find that the payment of the $16,000 was not a premium for the loan of the notes but was in fact a fee to Livingstone & Co. for devising the tax reduction plan here involved and for handling the "transactions" called for by the plan.

14. On December 15, 1956, coupons became due on United States Treasury 2⅞% notes maturing June 15, 1958. On the assumption that he had borrowed $2,000,000 of these notes from Livingstone & Co. to cover the "short sale" to Salomon, Shapiro purported to pay Livingstone & Co. the sum of $28,750 which equaled the amount of the coupons due December 15, 1956. This payment was not accomplished by a transfer of funds. It was accomplished by Livingstone & Co. making a bookkeeping entry debiting the Shapiro account in that amount against his fictitious "credit balance" of $70,628.42. This amount of $28,750 the plaintiffs deducted from their joint income tax return for the calendar year 1956. The legality of this deduction is also in issue in this case.

15. Similar "payments" were made on June 15, 1957, December 15, 1957,[1] and June 15, 1958. In each instance no transfer of funds took place and no actual payment occurred. "Payment" was ac-complished by the bare device of making notations on the books of Livingstone & Co.

16. On December 15, 1957, and again on June 15, 1958, Livingstone & Co. "paid" Shapiro $23,750 on account of the coupons due on those dates on the bonds that had been "pledged" by Shapiro to Livingstone & Co. No transfer of funds occurred. "Payment" was accomplished by crediting Shapiro's account on the books of Livingstone & Co. The "pledged" bonds were the same bonds that had been sold to Salomon on June 19, 1956.

The plaintiffs reported these two sums as income on their federal income tax returns in the years "received", and the defendant, for protective purposes, has not excluded them from income.

17. On May 14, 1958, Shapiro "sold" $2,000,000 face value United States Treasury 2⅜% bonds due June 15, 1958, for $2,025,199.18 to Livingstone Securities Corporation through Livingstone & Co.

On the same day Shapiro "bought" $2,000,000 face value United States Treasury 2⅜% bonds due June 15, 1958, for $2,025,824.18 from Livingstone Securities Corporation through Livingstone & Co.

Payment for the sale and purchase of these bonds was made by offsetting bookkeeping entries. No funds were transferred. No bonds were delivered or intended ever to be delivered. On June 16, 1958, "transactions" took place which are reflected by the following book entries:

1. The payments made on June 15 and December 15, 1957, totaling $57,500, were the subject of litigation in the United States Tax Court. Plaintiffs' brief in the case before me contains at page 30 the following statement concerning the Tax Court case:

"On April 12, 1963, the United States Tax Court held in the case of Shapiro v. Commissioner, 40 T.C. [34] No. 7, that the taxpayer's transaction involved therein with respect to the taxable year 1957 was a sham, and that the claimed deductions were not allowable under Section 212(1) of the 1954 Code. It is submitted that the Tax Court was in error and will be reversed on appeal. The Tax Court case involved the same taxpayers who are involved in the instant case, and involved a similar issue for a different year."

On August 14, 1963, a stipulation was filed holding the determination of the present case in abeyance pending the final outcome of the proceedings in the Tax Court case. The appeal taken by the taxpayers from the Tax Court decision was dismissed by an order entered on October 28, 1963, in the Court of Appeals for the First Circuit, Case No. 6215.

Livingstone Securities Corporation debited Shapiro $2,000,000 on account of United States Treasury 2⅞% notes in that face amount which had matured the previous day and credited Livingstone & Co. in the same amount. Livingstone & Co. in turn debited Shapiro in the amount of $2,000,000 and credited Livingstone Securities Corporation.

On June 16, 1958, Livingstone & Co. sold on behalf of Shapiro to Livingstone Securities Corporation $2,000,000 in face amount of United States Treasury 2⅜% bonds which had matured the previous day. This resulted in a credit in Shapiro's favor in the amount of $2,000,000 on the books of Livingstone Securities Corporation and Livingstone & Co. Payment in each instance was made by means of offsetting bookkeeping entries. No funds were transferred.

On June 16, 1958, Livingstone & Co. debited Shapiro with an additional commission of $600. After taking into account all the credits and debits hereinabove described, there remained on the books of Livingstone & Co. a "credit" balance of $1,903.42 in favor of Shapiro. Livingstone & Co. paid this amount to Shapiro by check on July 8, 1958.

The transactions that took place on June 16, 1958, were sham transactions wholly lacking in substance.

The payment of $1,903.42 by Livingstone & Co. to Shapiro on July 8, 1958, was in fact a partial refund of the fee of $16,000 that Shapiro had paid Livingstone & Co. on June 22, 1956.

### Conclusions of Law

The Court has jurisdiction over the parties and the subject matter of this action.

The applicable statute is Section 212 of the Internal Revenue Code of 1954 (26 U.S.C., 1955 ed., § 212). The pertinent part of the statute provides as follows:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

"(1) for the production or collection of income; * * *".

Since the tax reduction plan and the transactions carried out pursuant to the plan were complete and total shams utterly lacking in substance, the $16,000 paid by Shapiro to Livingstone & Co. was not an expense paid for the production or collection of income and is therefore not an allowable deduction.

The "credit balance" of $70,628.42 standing on the books of Livingstone & Co. in favor of Shapiro was a mere bookkeeping entry generated by sham transactions and was in fact nonexistent. The debiting of a charge of $28,750 (itself a sham) against such a "credit balance" was a wholly illusory entry which could not possibly accomplish the payment of money by Shapiro to Livingstone & Co. or anybody else. The item of $28,750 is not an allowable deduction not only because it was not paid for the production or collection of income, but also because it was not paid at all.

The complex of "paper" transactions in United States notes and bonds involved in this case is but another variation of similar Livingstone & Co. schemes that have been scrutinized by the courts and found to be lacking in substance. Miles v. Livingstone, 1962, 1 Cir., 301 F.2d 99; Goodstein v. Commissioner of Internal Revenue, 1959, 1 Cir., 267 F.2d 127; Nichols v. Commissioner of Internal Revenue, 1963, 5 Cir., 314 F.2d 337; Rubin v. United States, 1962, 7 Cir., 304 F.2d 766; Becker v. Commissioner of Internal Revenue, 1960, 2 Cir., 277 F.2d 146; Lynch v. Commissioner of Internal Revenue, 1959, 2 Cir., 273 F.2d 867; Broome v. United States, 1959, 170 F.Supp. 613, 145 Ct.Cl. 298; Jockmus v. United States, D.Conn.1963, 222 F.Supp. 781.

The District Director of Internal Revenue was right in disallowing the plaintiffs' claim for refund.

The plaintiffs are not entitled to recover. Judgment will be entered dismissing the complaint.